Kimball-Clark Co. v. Crosby, 175, Wis. 337.

KIMBALL-CLARK COMPANY, Appellant, vs. CROSBY, Respondent.

*October 19—November 15, 1921.*

*Sales: Warranty: Affirmation of fact: Reliance by buyer.*

1. Defendant, a sawmill operator, inquired of plaintiff the price of his sawmill, to which plaintiff replied that the machinery had been sold but might be repurchased, and that "the necessary belting is all here," and later quoted a price for the mill and machinery which was accepted. *Held,* that under sec. 1684*t*—12, Stats., providing that any affirmation of fact made by the seller tending to induce the purchase is an express warranty, the plaintiff is liable for a shortage in the belting.

2. Plaintiff's letter, after stating that the machinery which had been sold was all in good condition, described the power plant owned by it, referring to boilers, engines, and other equipment, and a subsequent telegram offered the mill and machinery at a designated price "the way it stands." *Held,* that the word "machinery" referred to that which plaintiff was to repurchase and did not include or cover the boilers, and defendant, a man of experience in the business, having examined them, plaintiff is not liable if the boilers were not in usable condition.

APPEAL from a judgment of the circuit court for Oneida county: A. H. REID, Circuit Judge. *Reversed.*

The defendant, engaged in the sawmill business at Rhinelander, Wisconsin, on November 3, 1919, made written in-

quiry of the plaintiff at Kimball, Wisconsin, as to plaintiff's sawmill, asking for a price including the machinery, boilers, etc., and indicating a desire to examine it. On November 4th plaintiff answered, describing in general terms the mill building and continuing as follows:

"With regard to the machinery, it was sold but has never been dismantled and can be bought cheap. The machinery is all in good usable condition and everything that goes with a single circular mill. The power plant consists of two 50-inch x 14 ft., one 60-inch x 14 ft., and one 50-inch x 16 ft. boilers. There is a fine 20-inch x 26 drive slide-valve engine that has ample power to drive the entire mill at one time. There is also two smokestacks, one about 30 inch x 80 feet and the other 40 inch x 80 feet. The necessary belting is all here and the writer would say would be taken at a great saving. If you would consider looking this plant over, it would be advisable to let us know quite promptly as the people who own the machinery may be making plans to wreck it, for all we could say."

On November 6th the defendant telegraphed plaintiff as follows: "Wire price on frame also get me price on machinery today if possible would like to run up on morning train if reply is satisfactory." This was answered the same day by plaintiff by telegram as follows: "Will make price on frame and machinery forty-five hundred the way it stands."

A Mr. Danielson was sent by defendant to examine and report on the condition of the mill, and thereafter on November 12th defendant wrote plaintiff as follows:

"I sent Mr. Danielson up to look at the Kimball mill and he made a report that decides me to go and look at it myself. You may expect me there either Thursday or Friday on the early train and I will look it over and then talk business with you."

The defendant thereafter visited the premises and examined the property. He learned there that such mill had not been operated for seven or eight years. On his visit he was informed, in response to his questions, that inspection certifi-

cates had been given on the boilers. (The testimony shows that such had been done, but at the time· when the mill was running.) Although he requested that he might, he did not see the belting that was stored in a shed away from the mill. On November 17th defendant wrote plaintiff with regard to the terms for the payment of the purchase price of $4,500.

The sale was completed and the articles purchased were all shipped to defendant; one of the four boilers was installed and used; three were condemned as unfit for use, and apparently, under the rulings of the industrial commission, were not permitted to be set up in defendant's mill. Subsequently correspondence was had between the parties, but with no reference by defendant as to any claim on his part on account of the boilers. He did complain, however, with reference to the belting and as to an extra nigger-tooth bar.

Subsequently the plaintiff brought this action against defendant for a balance claimed to be due on the sale of certain other goods and merchandise to defendant, and also as a second cause of action for the value of the services of one of· plaintiff's employees, claimed to have been rendered at the instance and request of defendant, in dismantling and shipping the mill and machinery.

The defendant answered admitting the liability on plaintiff's first cause of action except as to a small difference; denied liability on the second cause of action, and counterclaimed for damages arising out of the sale of the sawmill building and machinery: first, on the ground that there had been a failure to deliver the necessary belting claimed to have been covered by such contract to an amount of $600; second, that the boilers sold by plaintiff had been condemned and were at the time of sale totally unfit for use, and that the difference between the value of the boilers actually delivered and the value thereof as agreed upon was $833, the damages claimed; and third, that in such sale there had been a failure to deliver a nigger-tooth bar worth the sum of $150. Plaintiff replied.

Upon the trial a special verdict was submitted to the jury by which they found for the plaintiff as to the claim for services (the plaintiff's claim for goods and merchandise being disposed of by agreement), and supported the plaintiff's version of the transaction as to the nigger-tooth bar, finding also that the value of that portion of the belting necessary for the operation of the mill but which was not delivered was $300; that the reasonable value of the four boilers, if they had been in good usable condition at the time of the sale, would have been $1,400; that their value when delivered was $567.

After motions by the respective parties the court granted judgment in favor of the plaintiff for the amounts found or agreed upon as due it, and for the defendant for the $300 for the belting and for the $833 for the deficiency in the value of the boilers, and the balance being in favor of defendant judgment was entered for him.  From such judgment the plaintiff has appealed.

*A. W. MacLeod* of Washburn, for the appellant.

*Charles F. Smith, Jr.,* of Rhinelander, for the respondent.

ESCHWEILER, J.  In his submitting a special verdict to the jury and by his subsequent rulings the trial court treated the letter of November 4th, quoted above, as though containing such affirmations of fact concerning the two several items of purchase, the belting and the boilers, as brought the statements of the letter within the terms of sec. 1684$t$—12, Stats., relating to the sale of personal property and providing that any affirmation of fact by the seller relating to the goods is an express warranty if the natural tendency of such affirmation is to induce the buyer to purchase the goods and if he purchases relying thereon, and further held that as such affirmations they were in fact relied upon by defendant in making the purchase.

In view of the statement in that letter, "the necessary belting is all here," the fact that his request to see the belting was not complied with, and the other facts and circumstances in

this case, we do not feel justified in disturbing the conclusion reached by the trial court in regard to that item, and therefore so much of the judgment as allowed the defendant $300 damages because of the undisputed shortage in the belting cannot be now disturbed.

A substantially different situation is presented as to the boilers. As to these the trial court held that from the language in the same letter, "the machinery is all in good usable condition and everything that goes with a single circular mill," although followed as it was by the separate description of the power plant specifically mentioning the four boilers, was nevertheless just such an affirmation of fact as to the boilers and to be followed with the same result as that of the belting. He construed the general term "machinery" in the quoted phrase as including and covering the four boilers though thereafter specifically mentioned, and that such expression so construed amounted to an affirmation that such four boilers were in good usable condition. In this, however, we think the trial court erred.

It appears from the letter of November 4th and from the uncontradicted testimony that the machinery as a part of the mill outfit was separate and distinct from the power plant, which included the boilers and engine. The machinery therein referred to did not belong to plaintiff, and its offer to sell the entire outfit contemplated its repurchasing such machinery. No complaint was or is made. but that the machinery so specifically designated and repurchased by plaintiff and delivered to defendant pursuant to contract was in good usable condition just as stated in the letter. Throughout the entire correspondence and transactions the power plant was always treated and mentioned as separate and apart from the machinery. It is to such constantly and consistently separately recognized item of machinery that the expression in the letter as to its usable condition would reasonably and naturally apply, and to that alone, under the testimony here, it should have been confined.

Furthermore, it is quite evident that the defendant did

not at the time of the transaction rely upon anything in the nature of an affirmation with reference to the condition of the boilers or even as to the machinery, and ought not now to be permitted to insist that there was any such reliance. By the telegram of November 6th from plaintiff the defendant is informed that the price for the entire contemplated purchase is $4,500 "as it stands." This is the price upon which the contract is closed. After having such plain notification that the property was, at the price so fixed, to be sold in the condition in which it then stood, he sends his representative to make an examination and follows such examination and report thereon by his own personal investigation of the machinery and the plant as it stood. He was familiar with such matters, having before this made somewhat similar purchases of second-hand mill machinery and materials and erected sawmills therefrom. No fraud or artifice to prevent his making a thorough examination of the boilers and of the machinery is suggested in the record. His opportunity, therefore, to see what there was to be seen about the machinery and boilers was entirely at his own pleasure.

Before the plant was dismantled and shipped it appears that he was notified by his agents dismantling the mill that these boilers were of an obsolete type and of questionable value. Nevertheless he permittd their shipment with the other articles purchased, and during the somewhat protracted subsequent correspondence between the parties with reference to other matters, including the belting, no suggestion is made by defendant that there had been any failure by plaintiff to live up to any alleged representations as to the condition of these boilers. Such contention on his part seems to first appear in the counterclaim in this action. Furthermore, his own evidence as to having made the purchase in any reliance upon representations on plaintiff's behalf as to these boilers is very unsatisfactory and unconvincing and, in view of the other facts in the case, entirely

insufficient to support the conclusion arrived at by the trial court in this particular.

The judgment therefore must be modified by striking out the allowance to the defendant of the sum of $833, which would result in a balance due the plaintiff of $236.54, for which sum, together with interest and the costs of the action, judgment should be entered in the court below.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment as indicated in the opinion.